Good morning, Your Honors, and may it please the Court, my name is Emily Koza, and I'm with the Office of the State Appellate Defender, representing Sean Walls in this appeal. This is an appeal from a murder conviction in Peoria County. After a jury trial, Mr. Walls was convicted of the first degree murder of Derrick Booth, Jr., and sentenced to 50 years in the Illinois Department of Corrections. Now I'm going to be focusing the majority of my argument today on the first issue raised in the brief, the misconduct of Prosecutors Shelby and Straub during their closing and rebuttal arguments. And with any remaining time, I will address the second argument, which is that the trial court erred in failing to appoint a new post-trial counsel where there was evidence of counsel's possible neglect in the record. During their closing and rebuttal arguments, Prosecutors Shelby and Straub argued facts not in evidence, misrepresented facts, vouched for the credibility of the State's witnesses, misstated the law, and made improper emotional appeals to the jury. There were close to 30 improper remarks littered throughout the arguments. And rather than going through each one individually, as I did in my brief, I would like to focus on the broader picture of the conduct here by highlighting a few of the more egregious statements, starting with Prosecutor Shelby's blatant misstatement of testimony given by the State's expert witness, Dr. Denton. Dr. Denton testified that if Booth had been holding the gun when he was shot, he would not necessarily expect to see evidence of soots, abrasions, or bruising on Booth's hands. But Shelby told the jury that Denton's opinion was exactly the opposite, stating that he testified in, quote, in all his years, when there's a struggle for the gun, there will be evidence of soots, abrasions, bruising, something on the hands that struggled. This was a clear misstatement of the evidence that went to a key issue at trial. But the prosecutors here not only misstated facts, they invented them. For instance, Prosecutor Shelby invented a damning exchange between Prosecutor Straub and defense witnesses Keisha Hinkle and Brianna Kelly. Keisha and Brianna, who are sisters, both testified that it was Booth, not Walz, who pulled out a gun. Shelby argued that the women were lying for Walz and that they were not really outside to see the altercation. To support that argument, Shelby used manufactured testimony. She told the jury that when specifically asked by Prosecutor Straub who else was outside to see the incident happen, Keisha failed to mention Brianna and Brianna failed to mention Keisha. But as the state admits, Straub never asked Keisha or Brianna a general question as to list other people who were outside. And each woman, during her testimony, stated that she was outside with her sister. This was a blatant fabrication aimed at discrediting occurrence witnesses who named Booth as the aggressor. This was clearly improper. Further, as the state agrees, Shelby invented the fact that British folks told the officers in her videotape statement that Walz confronted Booth about money and argued that this was consistent with British's statements at trial. In other words, Prosecutor Shelby manufactured a prior consistent statement that effectively buttressed the state's theory of motive. Now looking at the totality of inventions and misstatements of facts in this case demonstrates something more than mere coincidence. These are not minor misremembrances of collateral facts. These are significant misstatements on key issues in the case. And this becomes even clearer when considered in conjunction with the misstatements of law here. Now it's well settled that the defendant is not required to prove that he was justified in using deadly force. Rather, once some evidence of self-defense is presented, the state is required to disprove justification beyond a reasonable doubt. Here, Shelby argued that the state had met its burden to disprove justification because Walz had failed to give a credible explanation for his behavior. She essentially conflated the jury's determination of Walz's credibility to its finding of his guilt. This was a misstatement and a misapplication of the law. The jury was entitled to find Mr. Walz not guilty, regardless of whether or not they believed his story. Similarly, the jury was entitled to find that Mr. Walz acted in self-defense, regardless of whether or not the jurors believed that Booth had a weapon. But the state misinformed the jury on this point by telling them that, quote, if Booth never had a gun and Walz had it all along, we never get to second-degree murder. We never get to justification. We are right at first-degree murder. To tell the jury that they could not find Walz acted in self-defense unless Booth had a weapon was, again, a clear misstatement of the law. Moreover, it was a clear misstatement of the law on one of the central issues in this case. And finally, this court should note that Prosecutor Shelby and Schraub not only invented facts and testimony and misstated the law, they exploited the emotionality of this situation. They referred to Booth as a kid and remarks on the fact that he looked like a baby, each time encouraging the jurors to associate him with a member of a class that society regards as vulnerable. They implied that Booth was communicating with the jurors after his death, telling them, quote, what he couldn't say, he left on his body, unquote. Shelby told the jurors that, again, quote, the law has a name for this kind of tragedy, murder, first-degree murder. Implicitly encouraging the jurors to convict Walz based on the tragic circumstances in this case. These comments, along with the others highlighted in my brief, demonstrate a calculated attempt by the prosecutors to undermine reason in favor of visceral appeal. And together, the nearly 30 inaccurate and inappropriate comments during closing and rebuttal arguments served to deny Mr. Walz a fair trial. Accordingly, on behalf of Mr. Walz, I respectfully request that this honorable court reverse this conviction and remand for a new trial. However, in the event that this court does not find that the prosecutor's conduct warrants a new trial, we ask that it remand this matter for additional post-trial proceedings, including the appointment of new post-trial counsel to assist Walz in filing a new post-trial motion based on evidence in the record that establishes counsel's possible neglect of Mr. Walz's case. At the trial, the state entered into evidence a phone that they claimed belonged to Mr. Walz, and they also claimed that it was collected from him when he had turned himself into the police station. During his testimony, Mr. Walz emphatically denied that the phone was his. Now, the date on the handwritten evidence tag for the bag containing the phone is 5-28-14, two days after Mr. Walz turned himself into the police. Counsel did not notice this discrepancy and never brought it up. Now, prior to sentencing, Mr. Walz alleged that trial counsel was ineffective and that the detectives involved in the case had lied on the stand when they claimed that the cell phone was his. In response, defense counsel told the court that, quote, he believed the foundation for the cell phone was accurate and that he had no reason to believe that the prosecutors had put a fake cell phone into evidence. But again, there was a two-day gap in between when the evidence was allegedly collected and when it was placed into evidence. That defense counsel failed to notice this discrepancy and believed the foundation to be accurate indicates this possible neglect of the case. And further, counsel also failed to notice other inaccuracies in the cell phone evidence. Although the state alleged that Mr. Walz had made or received two phone calls shortly after the shooting, one of the alleged calls involved a number that was only five digits, based on the pictures of the cell phone activity that the state had entered into evidence. This means that it couldn't have been an actual phone call because phone numbers are seven digits. And again, counsel's failure to notice this discrepancy further indicates this possible neglect of the case here. So because the evidence in the record establishes counsel's possible neglect of Mr. Walz's case, we respectfully request that in the event that this honorable court does not grant him a new trial, it remains his case for additional post-trial proceedings, including the appointment of conflict-free counsel. And if your honors don't have any questions, thank you. Thank you, counsel. May it please the court. Good morning, your honors, counsel. Thomas Rattle on behalf of the people. I will take the last argument first. When conducting a criminal hearing, the defendant presents a claim regarding why he thinks that his counsel was ineffective. Then the trial judge can inquire of the defendant what his belief is, and then if he believes it's necessary, inquire of the defense counsel about what the defendant's claims are. What happened in this case was the defendant filed a letter in which he complained that the phone was not his because he had not seen the phone and had called records from 526 and 527, and that was the basis for his belief that the phone was not his. That's in the letter. His comment during the defendant's comment was consistent with that because the allegedly additional phone calls that were beyond the time that he was free, he was incarcerated. That was the only basis for his claims regarding the cell phone. The trial judge asked the defense counsel what he believed about that phone, and he believed the evidence was accurate and that the state had put on an appropriate foundation for the phone. There was no allegations by the defendant regarding the discrepancy in the 528 date on the bag. There was no complaint about the phone numbers. So what the trial judge did in making his decision was based on the defendant's complaints at the time. That decision is viewed under manifest with the evidence, and since there was nothing erroneous about the judge's findings and those claims weren't raised to the judge, there's no reason for sending this back to a crinkle hearing. The judge did a proper crinkle hearing, and therefore this court should not send it back for that. Turning to the first argument, there are obviously a plethora of complaints about what the prosecution argued. I've broken them down individually. I've numbered them, so I will go through each of them that she's identified. Misstatement of evidence regarding the suit, abrasion, bruising, something on the hands regarding the struggle. Dr. Denton specifically testified, and pardon me for reading, but these are quotes. There was no evidence of any kind of close-range firing. That's Volume 10, 203. If I do not see things that come out of the barrel of the bullet as the bullet, cloud of smoke, or suit, or particles of gunpowder that come out burning or unburned, etc., etc., then I will see those particles of smoke or suit. I did not see that on the victim. I did not see anything on the victim's hands that showed me any gunshot-type injuries, no abrasions or tears on his fingers, etc. That's 10 to 11 for the record. And it goes on and on. I have it in the brief. I don't want to bore you by reading this. As far as the trajectory of the bullets and that testimony, that's also set forth in the brief about what Dr. Denton said and what the theory presented by the defense counsel that he responded to. That's in the brief. Regarding the information you have recited to us on those two allegations, were there objections during the argument? I don't recall that there was objections regarding that. Oh, no, no, no. These are generally not objected to arguments. So as you recite the instances where the prosecutor allegedly improperly misstated evidence, just let us know if there was an objection. Oh, thank you. I do not recall there being any particular objection to these. There were a couple of instances, but I'm not sure they were within the arguments that she's pointing out. Let's see. Defendant complained that the defendant, regarding the Brianna Conant and Lakeisha Hinkle's testimony, Brianna testified, or the video did show her that there was confrontation on the porch. There was also direct testimony regarding that there was a discussion about the money and that Brianna was asked who was present, though not in the general sense. She was asked about some specific people. And then Brianna and Keisha have other sisters or another sister, and they were only asked about if she wanted to testify. She was out there with a sister. She can identify which sister it was. So I think that it falls within the reasonable inferences argument. Was the other sister at the party? I do not recall. I believe all of the sisters were there. She did testify that she had another sister, but I don't have that. I believe it's in the brief. Shifting the burden of proof. The prosecutor went through the jury instructions, set forth what the burden of proof was, that the state had the burden of proof beyond a reasonable doubt. There was also instructions regarding second-degree murder. There is a burden upon the defendant in a second-degree murder to disprove the element in that case. As far as comments regarding what the defendant said or didn't say, the defendant testified. As we set forth the people versus Pope, once the defendant has testified, the prosecution has the right to criticize the credibility of the defendant and to criticize the theory of the defendant's case. People set forth evidence that would disprove that he acted in self-defense. So now the defendant's theory, his testimony was that he was acting in self-defense. Of course the state's going to criticize that and say that that was incorrect. That's part of their argument. So there's nothing wrong with what the state argued in that instance. As far as the emotional appeal regarding referring to the youth of the victim versus the age of the defendant, we point out that the defendant himself referred to the victim as boy. He was thinking about getting a Ford car because all these young guys are doing things these days. He talked about his age difference saying, I'm like, man, I'm 38 years old, the victim being 22 years old at the time of his death. He also talked about how he cut off his dreadlocks because he did not represent himself as a young, wild person. So it is reasonable inferences from the record that there is a reason for why you're discussing the age differences between these individuals based on the defendant's own statements. I believe I have covered everything. If not, it is in our brief. If there's no other questions, we expect to ask this court to approve. You're suggesting that this is not a closely balanced case? Correct, Your Honor. This is not closely balanced in any respect. There's three witnesses that testified that the shooting defendant, of course, fled, hid out for two days, burned his clothes, and then cut off his hair before turning himself in. Destruction of evidence and fleeing is evidence of consciousness of guilt, not to mention the witnesses who testified that he got into an argument with the victim prior to the shooting. And so. So under a plain error analysis, does this fall into a structural error? No. Well, first of all, except for a couple of minor instances where there's misremembering, I've pointed that out in our brief, there's no errors in, no other errors by the prosecution in making the comment. And it's not structural error. It's not, it's not so deprived of a fair trial. These comments were all fair comments except for a couple of missed, as we point out. So no. No, it's not falling into structural error. Thank you, Your Honor. Counsel. Okay. So picking up where counsel left off in regards to whether or not this is structural error, this, there were, again, close to 30 improper comments here. And, again, some of this included invention of that. Literal invention of testimony that served to discredit the defense witnesses. And the state also invented a demonstration that happened between one of the witnesses. So Prosecutor Straub, on her rebuttal, testified that the state's witness, Jasmine Burks, who was the only witness, by the way, to testify that she, she was the only occurrence witness to testify that there was not any sort of struggle before the gunshot went off. Prosecutor Straub, during her rebuttal, said, and when I asked Jasmine to demonstrate, when I asked her, you know, what happened, she, actually, you know what, let me get the exact quote. I'm sorry. And Jasmine Burks, when I asked her to demonstrate, she stood up, as I recall, and I stood here and I said, show me what he did. And she went like that and pointed right at me. This was a demonstration that never happened. Now, the state, in their brief, concedes that the record doesn't show that any demonstration during Jasmine Burks' testimony happened, and says that this was a minor misremembrance and that Ms. Straub was merely indicating that a demonstration had happened with another witness, which was true. Christina Jones did demonstrate what she observed. This was not a minor misremembrance. The substance of the testimony between these two witnesses was starkly different. And so, for the state to say, well, this is a minor misremembrance, it wasn't. It was a blatant fabrication of testimony that never happened. And it wasn't the only fabrication of testimony during these closing arguments. So, again, the egregiousness of the prosecutor's conduct here and the sheer number of comments, I believe, makes this structural error. Going back to Justice O'Brien's question about whether or not the other sister was at the party, there's absolutely no evidence in the record that the other sister was at the party. And again, the state's only response to this argument is one that is not based at all on the record. I think should be telling. And finally, in regards to Dr. Gatton's testimony, it doesn't matter that he testified that there was other evidence that indicated that this wasn't a close-range shot. What matters here is that his testimony was that he wouldn't necessarily expect to see these things, the soot, abrasions, bruising, he wouldn't necessarily expect to see these things on the victim's hand. But the prosecutor used the lack of injury on the hands as conclusive evidence that there wasn't a struggle, when that wasn't their expert's testimony. It's as simple as that. And so, again, taking all of this into consideration, we ask that this Honorable Court grant Mr. Walls a new trial. And I'm happy to answer any questions your Honors have. Thank you, Counsel. Thank you. This Court will take this case under advisement. The members of the procedure have now to take a break and resume after lunch.